United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA (NAGEL) WONG,<br><br>  Plaintiff,<br><br>  v.<br><br>GOLDEN STATE AUCTION GALLERY, INC., et al.,<br><br>  Defendants. | Case No. 14-cv-00999-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Docket No. 82 |

Plaintiff Dora Wong has filed suit against Defendants Golden State Auction Gallery, Inc. and Calvin P. Wong.[1] According to Ms. Wong, Defendants violated her rights, as protected by California law, by using her name, without her consent, to sell a piece of Chinese calligraphy. Currently pending before the Court is Ms. Wong's motion for partial summary judgment. According to Ms. Wong, "there is no genuine issue of material fact with respect to whether Defendants illegally utilized [her] name without her knowledge or consent in the promotion and sale of the Calligraphy all in express violation of California's right of publicity statute, California Civil Code § 3344, *et seq.*, and, therefore, [she] is entitled to judgment as a matter of law on the issue of liability." Mot. at 5.

Having reviewed the parties' briefs and accompanying submissions,[2] the Court finds this matter suitable for disposition on the papers. Ms. Wong's motion for partial summary judgment is

---

[1] Ms. Wong and Mr. Won are not related. As alleged in the complaint, Mr. Wong is "the principal stockholder" of Golden State. Compl. ¶ 13. Consistent with this allegation, Mr. Wong testified during his deposition that he is the owner of Golden State. *See* C. Wong Depo. Tr. at 13. He is also Golden State's CEO. There are no other officers for the company. *See* C. Wong Depo. Tr. at 14.

[2] Ms. Wong failed to file a timely reply.

1  **DENIED**.  As discussed below, there are, at the very least, genuine disputes of material fact
2  regarding knowing use and appropriation to Defendants' advantage.

### I.  FACTUAL & PROCEDURAL BACKGROUND

Ms. Wong has asserted two causes of her action in her complaint: (1) a violation of California Civil Code § 3344 and (2) a violation of California Business & Professions Code § 17200.  Because Ms. Wong's motion seems to be focused on § 3344 alone, this order likewise focuses on § 3344 alone.  However, the Court also notes that the analysis here would also be applicable to the § 17200 claim.

Section 3344 provides in relevant part that "[a]ny person who knowingly uses another's name, . . . in any manner, . . . for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, . . . shall be liable for any damages sustained by the person or persons injured as a result."  Cal. Civ. Code § 3344(a).  It also provides:

> The use of a name . . . in a commercial medium shall not constitute a use for which consent is required under subdivision (a) solely because the material containing such use is commercially sponsored or contains paid advertising.  Rather it shall be a question of fact whether or not the use of the person's name . . . was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required under subdivision (a).

*Id.* § 3344(e).

The evidence submitted by the parties with respect to Ms. Wong's §§ 3344 claim reflects as follows.

Ms. Wong has collected Chinese art since the 1980s.  *See* D. Wong Depo. Tr. at 12.  Among the works she owns are two court/bannermen paintings that are well known.  She has loaned those pieces and others to several museums.  *See* D. Wong Depo. Tr. at 15, 18, 52.  Ms. Wong has been invited to attend a conference in Shanghai sponsored by the Congress of Chinese Collectors.  *See* D. Wong Depo. Tr. at 20.  She has also been featured in a Chinese antique journal called *Orientations*.  *See* D. Wong Depo. Tr. at 23.

The underlying dispute in the instant case relates to a certain piece of Chinese calligraphy.

Ms. Wong was once the owner of that calligraphy. She consigned the calligraphy for sale to an art dealer in New York by the name of Tony Dai. *See* D. Wong Depo. Tr. at 29. When Ms. Wong gave the calligraphy to Mr. Dai, she also gave him an appraisal for the calligraphy that had been done by C.C. Wang, a scholar and Chinese art connoisseur. *See* D. Wong Depo. Tr. at 12, 31, 34-35; *see also* Chang Decl., Ex. A (appraisal) (valuing the calligraphy at $30,000). The appraisal had Ms. Wong's name on it, *i.e.*, as the person receiving the appraisal. *See* Chang Decl., Ex. A (appraisal). According to Ms. Wong, most people would recognize C.C. Wang's name, and she is "not famous like C.C. Wang." D. Wong Depo. Tr. at 46. Defendants agree. *See* C. Wong Depo. Tr. at 23 (indicating that C.C. Wang is one of the best appraisers of Chinese art outside of China); He Decl. ¶ 7 (stating that he has "only heard of and know the reputation of C.C. Wang as [an] expert[] in Chinese art[;] I have never heard of Ms. Wong nor know of her reputation as a Chinese art collector").

Although Ms. Wong's deposition testimony is somewhat confusing, it appears that she told Mr. Dai that he was not to sell the C.C. Wang appraisal but he could use it as a reference. *See* D. Wong Depo. Tr. at 38-39, 52-53.

Mr. Dai successfully sold the calligraphy. He gave Ms. Wong $5,000 from the sale proceeds. *See* D. Wong Depo. Tr. at 33. Mr. Dai did not return the C.C. Wang appraisal letter to Ms. Wong. *See* D. Wong Depo. Tr. at 35.

The buyer of the calligraphy was Zhi Feng He. *See* He Decl. ¶ 4. Mr. He paid a total of $20,000. *See* He Decl. ¶ 5. Mr. He was given a copy of the C.C. Wang appraisal. *See* He Decl. ¶ 6. Mr. He "bought the Calligraphy based on the appraisal." He Decl. ¶ 8 (adding that "[t]hese supporting documents that come[] with the Calligraphy are important documents to verify the authenticity of the Calligraphy").

Subsequently, Ms. Wong learned that the calligraphy had been sold yet again. Furthermore, Ms. Wong learned that her name had been used in conjunction with the sale of the calligraphy. *See* D. Wong Depo. Tr. at 40-41.

This time, Golden State was the entity that auctioned off the calligraphy. Mr. He had consigned the calligraphy for sale to Golden State. *See* He Decl. ¶ 9; C. Wong Depo. Tr. at 24.

1  Mr. He gave Golden State the appraisal letter to help auction the calligraphy. *See* He Decl. ¶ 9-10;
2  C. Wong Depo. Tr. at 33-34. The appraisal was used as a part of Golden State's March 2013
3  catalog. *See* He Decl. ¶ 10. More specifically, the appraisal appeared on page 21 of the catalog.
4  *See* C. Wong Depo. Tr. at 78-79. The catalog was made available on Golden State's website. *See*
5  C. Wong Depo. Tr. at 78-79.

6  Prior to the auction, Mr. Dai (who is also a friend/acquaintance of Mr. Wong) asked Mr.
7  Wong to remove Ms. Wong's name from the catalog. Mr. Wong did so as a favor, but some
8  catalogs had already been mailed out. *See* C. Wong Depo. Tr. at 74-76, 79.

9  The calligraphy ultimately sold for a hammer price of $140,000. *See* He Decl. ¶ 11; C.
10 Wong Depo. Tr. at 42, 44 (adding that there was also a $30,800 buyer's premium, which was paid
11 as part of the commission to Golden State). Golden State's commission for the auction was
12 $32,900. *See* C. Wong Depo. Tr. at 44 (referencing the combination of the buyer's premium, plus
13 $2,100); He Decl. ¶ 12.

## II. **DISCUSSION**

A.  Legal Standard

A party seeking summary judgment is entitled to such "if there is no genuine dispute as to any material fact and the [party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As indicated above, Ms. Wong seeks summary judgment on the issue of liability with respect to her § 3344 claim. Because Ms. Wong is asking for summary judgment on an issue for which she bears the burden of proof, she may prevail on summary judgment only if there is "'evidence sufficient to support a finding upon every element of [her] claim . . . , except those elements admitted . . .' by the adversary." *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983).

The elements of a § 3344 claim are as follows:

> (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercial or otherwise; (3) lack of consent; (4) resulting injury; (5) knowing use of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation of purchases;

4

1 and (6) a direct connection between the use and the commercial purpose.

2 *Marradi v. Capital Entm't Indus.*, No. CV 01-02622 DDP (CWx), 2002 U.S. Dist. LEXIS 28488,

3 at \*22 (C.D. Cal. Nov. 25, 2002); *see also Keller v. Elec. Arts Inc.*, 724 F.3d 1268, 1273 n.4 (9th

4 Cir. 2013); *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 680 (2010).

5 In their opposition, Defendants argue that the motion for summary judgment should be

6 denied because there are genuine disputes of material fact as to elements (2)-(5) above.

7 Defendants also argue that, at the very least, it would be improper to grant summary judgment as

8 to Mr. Wong given that there is no evidence to support his personal liability (*e.g.*, no evidence that

9 he is the alter ego of Golden State).

10 B.  Knowing Use

11 Element (5) above requires "knowing use of the plaintiff's name, photograph or likeness

12 for purposes of advertising or solicitation of purchases." *Marradi*, 2002 U.S. Dist. LEXIS 28488,

13 at \*22. "Knowing" applies both to the use of the plaintiff's name or likeness and to the purpose of

14 advertising or solicitation of purchases. *See Yeager v. AT&T Mobility, LLC*, No. CIV S-07-2517

15 KJM GGH, 2012 U.S. Dist. LEXIS 124560, at \*7 (E.D. Cal. Aug. 31, 2012) (stating that "the jury

16 had to find both types of knowledge under the first element in the instruction"); *see also* 1-800

17 CACI § 1804A (stating that a plaintiff must prove that defendant "knowingly used," *e.g.*,

18 plaintiff's name or likeness "on merchandise [or] to advertise or sell").  There is no knowing use

19 for purposes of advertising where the use was simply a mistake or inadvertent. *See Yeager*, 2012

20 U.S. Dist. LEXIS 124560, at \*9 n.2 (noting that "the word 'knowing' was added to section 3344

21 in order to *preserve* the mistake or inadvertence defenses that are unavailable in response to a

22 common law claim for right of publicity") (emphasis added).

23 Here, Mr. Wong's deposition testimony creates a genuine dispute of material fact as to

24 whether Defendants knowingly used Ms. Wong's name for purposes of advertising. Mr. Wong's

25 testimony suggests that the use of Ms. Wong's name was a mistake or inadvertent. *See, e.g.*, C.

26 Wong Depo. Tr. at 67, 73-76 (testifying that he "never heard about [Ms. Wong's] name before"

27 the lawsuit or at least until Mr. Dai asked him to remove her name from the catalog).

28 C.  Appropriation to Defendant's Advantage

5

For similar reasons, there is a genuine dispute of material fact as to whether Defendants appropriated Ms. Wong's name for their advantage.

In addition, as Defendants point out, the incidental use doctrine is fairly at issue under the circumstances. Under that doctrine,

> "[t]he value of the plaintiff's name is not appropriated . . . when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded."

*Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1254 (N.D. Cal. 2014) (emphasis omitted); *see also Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009) ("The rationale underlying [the] doctrine is that an incidental use has no commercial value, and allowing recovery to anyone briefly depicted or referred to would unduly burden expressive activity.").

"Whether the use of a plaintiff's name or likeness falls within the incidental use exception to liability 'is determined by the role that the use of the plaintiff's name or likeness plays in the main purpose and subject of the work at issue.'" *Id.*

> In determining whether the doctrine of incidental use applies, courts have considered "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work, and (4) the duration, prominence or repetition of the likeness relative to the rest of the publication." Even if the mention of a plaintiff's name or likeness is brief, if the use stands out prominently within the commercial speech or enhances the marketability of the defendant's product or service, the doctrine of incidental use is inapplicable. In *Pooley*, the defendant used, without consent, the name of likeness of the plaintiff, a professional golfer who was well-known for making a hole-in-one shot and winning one million dollars as a result, in a marketing video for its "Million Dollar Hole-in-One" fundraising service. The footage of the plaintiff constituted only six seconds of the entire eight minute video. While the court noted the duration of the use was relatively short in relation to the rest of the publication, the court found that the use was "crucial" to the defendant's advertisement because without it, the video would not have been as attractive to the target

6

> audience and because the plaintiff's hole-in-one was not fungible to that of any other golfer. The court also found that the plaintiff "was specifically selected because of his distinction and his wide market appeal." Accordingly, the court concluded that the incidental use doctrine did not apply because the use of the plaintiff's name and likeness was integral to the defendant's advertisement and "clearly enhanced the marketability of [the] defendant's services."

*Id.* at 1100-01. In this regard, it is notable that there is a genuine dispute of material fact as to whether Ms. Wong's name is of such a reputation that Defendants could expect an advantage from the use of her name. The evidence arguably suggests that Defendants were relying, if anything, on the use of C.C. Wang's name rather than Ms. Wong's.

D.  <u>Lack of Consent and Resulting Injury</u>

Given the genuine disputes of material fact identified above, the Court need not address itself with Defendants' contention that there is also a genuine dispute of material fact with regard to consent or lack thereof. *See generally* Opp'n at 9 (arguing that Ms. Wong impliedly consented to use of her name because she did not ask Mr. Dai to return the appraisal letter and she never contacted Golden State directly about the use of her name). Likewise, the Court need not address itself with Defendants' contention that there is a genuine dispute of material fact as to whether Ms. Wong suffered an injury as a result of Defendants' conduct. *See generally* Opp'n at 10 (questioning whether Ms. Wong suffered shame and embarrassment as a result of "two isolated instances of inquiry" by an art dealer and Sotheby's regarding the use of her name).

F.  <u>Personal Liability of Mr. Wong</u>

As noted above, Defendants have also argued in their papers that, at the very least, no summary judgment should be granted as to Mr. Wong in his personal capacity. Defendants contend that Mr. Wong can be held liable in his personal capacity only if he were found to be the alter ego of Golden State, and, here, there is no evidence to support the alter ego theory (nor was the alter ego theory pled). Because the Court is denying Ms. Wong partial summary judgment for the reasons stated above, it need not address this issue. The Court notes, however, that Defendants' position is of questionable merit. *See Adobe Sys. v. Software Speedy*, No. C-14-2152 EMC, 2014 U.S. Dist. LEXIS 173670, at *12-13 (N.D. Cal. Dec. 16, 2014) (in intellectual property infringement case, stating that "[e]ven where alter ego liability does not exist, a corporate

7

officer or director remains personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf"; "[p]ersonal liability on the part of corporate officers have typically involved instances where the defendant was the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity") (internal quotation marks omitted); *Legal Additions LLC v. Kowalksi*, No. C-08-2754 EMC, 2010 U.S. Dist. LEXIS 48988, at *4-5 (N.D. Cal. May 18, 2010) (noting that, "under California Civil Code § 2343(3), '[o]ne who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency . . . [w]hen his acts are wrongful in their nature'[;] [i]n other words, as stated by the Witkin treatise, '[a]n agent or employee is always liable for that person's own torts [and] [t]his is so whether the principal or employer is liable or not'") (emphasis omitted).

officer or director remains personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf"; "[p]ersonal liability on the part of corporate officers have typically involved instances where the defendant was the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity") (internal quotation marks omitted); *Legal Additions LLC v. Kowalksi*, No. C-08-2754 EMC, 2010 U.S. Dist. LEXIS 48988, at *4-5 (N.D. Cal. May 18, 2010) (noting that, "under California Civil Code § 2343(3), '[o]ne who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency . . . [w]hen his acts are wrongful in their nature'[;] [i]n other words, as stated by the Witkin treatise, '[a]n agent or employee is always liable for that person's own torts [and] [t]his is so whether the principal or employer is liable or not'") (emphasis omitted).

### III. CONCLUSION

For the foregoing reasons, Ms. Wong's motion for partial summary is denied.

**The status conference shall remain scheduled for March 24, 2016, but it shall now take place at 10:30 a.m. instead of 1:30 p.m.**

This order disposes of Docket No. 82.

**IT IS SO ORDERED**.

Dated: March 3, 2016

_____
EDWARD M. CHEN
United States District Judge